GARRISON et al. v. EAGLE WAGON WORKS et al.

(Circuit Court of Appeals, Second Circuit. November 9, 1915.)

No. 30.

PATENTS ⊙�net328—VALIDITY AND INFRINGEMENT—DUMPING CAR.

The Lawrence patent, No. 645,816, for a dumping car having a hopper bottom with hinged doors swinging downward to discharge the load and a double run of equalizing chain to hold them securely in place when closed, as to the latter feature was not anticipated and discloses patentable invention; also *held* infringed.

Appeal from the District Court of the United States for the Southern District of New York.

⊙⟭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by William T. Garrison and another against the Eagle Wagon Works and William Deveson, for infringement of patent No. 645,816, granted March 20, 1900, to George H. Lawrence, for a dumping car. Decree for defendants, and complainants appeal. Reversed.

The following is the opinion of the trial court:

In this action complainant asserts that defendant infringes the Lawrence patent for a dumper freight car by manufacturing a dumping wagon, intended to be drawn by horses, or at all events not to be self-propelled. Defendant's wagon is constructed in conformity with patent 699,262, issued May 6, 1902, to Van Wagenen.

In Eagle Wagon Works v. Columbia Wagon Co. (D. C.) 181 Fed. 150, the defendant in this case sued one alleged to infringe the Van Wagenen patent. In that suit the Lawrence patent was cited as an anticipation of the Van Wagenen invention. The defense was held not good, and the result affirmed in 183 Fed. 772, 106 C. C. A. 137. Unless this trial court is to take the unusual and extreme course of disagreeing with the Circuit Court of Appeals for the Third Circuit, this action must fail, provided the record be not so very different as to compel a different judgment.

This is the contention of present complainant, who asserts that the record in the Third circuit case "contained no proof that road wagons of the dumping type were frequently constructed with bottom doors hinged transversely, instead of longitudinally, and were perfectly operative." In my judgment it is very doubtful whether the present record does contain evidence that road wagons of the dumping type with doors transversely hinged were "perfectly operative." It is even more doubtful whether such road wagons, even if operative mechanically, were so successful as to close the door of invention to those devising wagons of the kind manufactured by this defendant.

It does not infrequently happen that a new record in a new case requires the abandonment of earlier decisions on the same patent. But it is also true that the first decision on a patent furnishes a species of target at which evidence may be directed in future litigation. Such evidence ought to be critically considered, and unless it is very strong earlier decisions should be adhered to. I do not think that the new evidence before this court is very strong, and I am sure that it is not sufficiently compelling to require this trial court to disagree with the appellate tribunal of the Third circuit.

Bill dismissed.

H. T. Fenton, of Philadelphia, Pa., for appellants.

Frederick G. Bodell, of Syracuse, N. Y., and A. E. Parsons, of Syracuse, N. Y., for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The improved dumping car belongs to the class in which the load is dumped by opening the bottom. The bottom is composed usually of two hinged doors, which normally are closed and held in closed position by some device; when released they swing downward, and the load falls or slides out; thereafter the doors are again raised into place and the car is ready to receive another load. The specification states that car is "simple and durable in construction and arranged to permit of conveniently opening and securely closing the doors without danger of unequal closing of said doors and a consequent loss of the loaded material." The structure in all its details is very clearly set forth. Figs. 2 and 3 here reproduced will make the description easy to understand. Fig. 2 is a plan view of the bottom of the car viewed from below. Other figures and the use of

the word "hopper" indicate a car with sloping sides running down to the doors, so that when the latter are open the loan will readily slide down to the aperature of discharge. Figure 3 is a sectional slide elevation on the line *3,3* indicated on Figure 2.

*Fig. 2*

*Fig. 3*

The patentee states that the hopper bottom "is provided with usual doors $C$ $C'$" connected by hinges $D$ $D'$, with the hopper-bottom, so as to readily swing into an open position when released. At one side of the hinge $D$ for the door $C$ is arranged a framework $E$, in which is journaled a transversely extending winding shaft $F$, provided at one outer end with a square offset $F'$ for the frame of a crank arm or other device to allow the operator to turn the shaft; the shaft being provided near the offset $F'$ with a ratchet wheel $G$, adapted to be engaged by a pawl $G'$ to lock shaft $F$ against accidental unwinding.

"On the shaft $F$ wind the ends of a chain $H$, extending longitudinally of the car and transversely across the doors $C$ $C'$ and under pulleys $I$, journaled in suitable bearings, at or near the free ends of the doors $C$ $C'$ at the under side thereof. The chain $H$ then extends to and passes over pulleys $J$ journaled in suitable bearings in the framework $E'$ secured to the hopper bottom $A$ at one side of the hinge $D$."

The patentee then describes a method of arranging the pulleys $I$ and their journals, so that when the doors are closed there is formed "a truss chain for securely holding the door." This feature is referred

229 F.—11

to only in claim 4, which is not involved in this suit. The specification then proceeds to detail the processes of opening the doors by releasing the pawl and of closing them by turning the shaft $F$ and winding up the ends of the chain. These are so apparent from a glance at the drawings that description may be omitted. The patentee then points out the advantages of his structure as follows:

"Now it is evident that in case there is any slack in one of the runs of the chain it is readily equalized owing to the chain passing over the pulleys $J$, spaced apart on the car body and on the side of the doors opposite to that on which the shaft $F$ is located. Hence the two runs of the chain push equally on the doors, near the ends thereof, and consequently both doors are swung properly into a closed position and are held in this position against accidental opening or against sagging at one end of the door owing to the equalized chain, the ends of which are uniformly wound up on the shaft $F$, the latter being locked against rotation by the pawl $G'$ engaging the ratchet wheel $G$."

The claims in controversy are:

"1. A dumping car, provided with a winding shaft located on the under side of the car and at one side of the dumping doors, and an equalizing chain arranged for winding at its ends on said shaft, the chain extending transversely across the dumping doors and having a traveling connection with the car, to allow the chain to equalize, substantially as shown and described.

"2. A dumping car, provided with a winding shaft on the under side of the car body and at one side of the dumping doors, an equalizing chain arranged to wind at its ends on said shaft, the chain extending transversely across the dumping doors and car body, and pulleys on the car body at the side of the doors opposite that at which the shaft is located, the chain passing over said pulleys, to allow the chain to equalize, substantially as shown and described.

"3. A dumping car, provided with a winding shaft on the under side of the car body and at one side of the dumping doors, an equalizing chain arranged to wind at its ends on said shaft, the chain extending transversely across the dumping doors and car body, pulleys on the car body at the side of the doors opposite that at which the shaft is located, the chain passing over said pulleys, to allow the chain to equalize, and door pulleys on the under side of the doors at or near the free ends thereof, and under which the chain passes from the winding shaft to the car body pulleys, substantially as shown and described."

It often happens that a patentee's description will indicate in detail the points in which his device differs from those of the prior art. There is no such detailed indication here. It will therefore be necessary to refer to the prior art as disclosed by the record to ascertain just what it is which Lawrence showed by way of improvement: when that is disclosed we can see whether it constituted patentable invention. Vehicles with dumping bottom are used on ordinary roads and on railroad tracks; so far as the arrangements for opening or closing their dumping doors are concerned they belong to the same art. This prior art may be considered in the order in which it is given in the reference index.

One Deveson identified a sketch of what he called "old style Watson wagon," which he said he had dealt in—presumably prior to the patent in suit. We find no such sketch in the record, but from his testimony it is apparent that it had two chains with no equalizing device. The Watson patent, 378,272, February 21, 1888, shows a dumping wagon in which the bottom of the wagon box is divided lengthwise through the center, the two hinged parts swinging downwardly to discharge the load. The doors are swung up into place and held there by four separate

chains wound on two drums, each chain is independent of the others. Each door is held in place by a pull upward and at each outside corner, no chain runs under either door crosswise or lengthwise. The Johnson patent, 474,744, May 10, 1892, shows bottom doors opening transversely; it has a single chain which runs only once transversely across the middle of the doors. There is no equalizer and the chain crossing the doors once only, there is nothing to be equalized. Brown, 131,248, September 10, 1872; Hoadley, 183,396, October 17, 1876; Hubbard, 303,518, August 12, 1884, and 295,174, March 18, 1884, show equalizing devices for whiffletrees. Haas, 293,167, February 5, 1884, shows a machine for drawing metal bars in which there is an equalizing device. Scherer, 451,173, April 28, 1891, has an equalizer in a burial apparatus. It needed no reference to these remote arts to establish the proposition that the mechanic art was familiar with various devices for equalizing the pull of cables, ropes, and what-not. But if Lawrence was the first to place under the bottom of a dumping car two runs of chain across both doors so located as to hold them efficiently and to secure such an equalizing of the pull on the chain, when wound up, that the chain presses uniformly against both doors, we do not see why he should be deprived of the fruits of his ingenuity because he employs one or more common mechanical devices in carrying out his method. That he was the first to do this is manifest from the record. Indeed upon the argument defendant's counsel admitted that the use of an equalizer in connection with a dumping car the bottom of which is held up by runs of chain was new with Lawrence.

We find no file wrapper in the record, nor any action in the Patent Office which would call for any modification of the claims in controversy, which in plain language cover the simple and apparently useful device which Lawrence disclosed. Does the defendant's device infringe? It has the two hinged doors, the single chain underrunning them twice and an equalizing device at the side opposite the shaft on which the ends of the chain are wound, such equalizing device operating as Lawrence's does and accomplishing the same result. It is contended, however, that infringement is not shown for the following reasons.

1. Defendant's wagon is not a railroad car for dumping coal; it is a road wagon for dumping dirt or stone. For anything that appears in the record this is a single art; so far as the opening and closing of the doors is concerned there is no difference between a dumping car and a dumping cart. At the opening of his specification the patentee says that his invention relates to railroad coal-cars of the hopper bottom type. He had already stated that he had invented a new and "improved dumping car." There is nothing in his drawings to indicate that the device is not adaptable for carts as well as cars. In his claims he does not confine himself to railroad cars, in each of them referring to the vehicle in which his arrangement is to be placed as a "dumping car."

2. That in defendant's car the opening between the doors runs fore and aft, instead of transversely. For some sort of dumping the one method may be preferable to the other, but the chains of defendant

which cross the doors fore and aft near their free edge, work in the same way as plaintiff's and are equalized in their effect just as plaintiff's are.

3. As an equalizer the defendant sometimes uses a single large wheel instead of the two small wheels *JJ;* sometimes it uses a yoke pivoted centrally as here shown to the ends of which the chain is attached. These are manifest equivalents.

*Fig. 7.*

4. That defendant's device is patented. It is made under patent to Van Wagenen, 699,262, May 6, 1902 (application August 8, 1901), a junior patent to Lawrence's. But a junior patent may have some additional feature of improvement, which will be found patentable over the senior patent, and nevertheless a structure made under it will infringe if it includes the patentable feature of the senior patent. This Van Wagenen patent was sustained by the Court of Appeals, Third Circuit, in a suit brought by the present defendant against the Columbia Wagon Company. 183 Fed. 771, 106 C. C. A. 137. In that suit the Lawrence patent was cited as an anticipation. We do not know what the record in that suit disclosed; but if the same question were presented to us on the record here we should be strongly inclined to reach a different conclusion. The Third Circuit laid much stress on the circumstance that in the Lawrence patent the runs of chain extend transversely across the dumping doors, whereas in Van Wagenen they run across the doors near their meeting edge. This is a necessary result of the one set of doors opening fore and aft while the other opens across. The court says nothing at all about the equalizing of the chain stress, which seems to us the really important contribution of Lawrence to the art. However the question of the patentability of the Van Wagenen patent is not here; and in the suit in the Third Circuit the defense of noninfringement was not raised. It may be noted that in a later Van Wagenen patent, 779,891, January 10, 1905, the equalizing yoke is eccentrically pivoted; this secures such a modification of action that one door is closed a trifle sooner than the other. If this modification subserves a useful purpose the later Van Wagenen device would no doubt be patentable despite the Lawrence patent, but it would nevertheless infringe that patent since its equalizer operates just as Lawrence's does to keep an equal strain on both doors when closed, holding them more firmly in position than the single unequalized chain of the prior art, or the plurality of independent chains which obviously required careful regulation to insure a constant equal pressure by each chain.

The decree is reversed, with costs, and cause remanded, with instructions to enter decree in accordance with this opinion.